# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NOEL DAVIS and DHAMEER WHITE,

     Plaintiffs,

v.

OFFICER MICHAEL PEREZ,

     Defendant.

1:16-cv-02784-NLH-JS

**OPINION**

**APPEARANCES:**

MATTHEW BENJAMIN WEISBERG
WEISBERG LAW
7 SOUTH MORTON AVENUE
MORTON, PA 19070
    On behalf of Plaintiffs

TIMOTHY R. BIEG
MADDEN & MADDEN
108 KINGS HIGHWAY EAST, SUITE 200
P.O. BOX 210
HADDONFIELD, NJ 08033-0389
     On behalf of Defendant Officer Michael Perez

**HILLMAN**, District Judge

    This case concerns claims of excessive force and First Amendment violations arising from the execution of a search warrant. Presently before the Court is the motion of the individual police officer defendant for summary judgment in his favor.

Also pending is Plaintiffs' appeal of the magistrate judge's denial of their motion to file an amended complaint. For the reasons expressed below, Defendant's motion will be granted, and Plaintiffs' motion will be denied.

## BACKGROUND

Plaintiffs Noel Davis and Dhameer White allege[1] that at 3:30 p.m. on September 18, 2014 Davis arrived at the apartment of White, her boyfriend, in Voorhees, New Jersey. About a half hour later while Davis was in the shower, she heard a loud knock on the apartment's front door. Because White did not answer, Davis got out of the shower, wrapped herself in a towel, and opened the bathroom door. As she opened the door, Davis saw White approaching the front door with his cell phone in his hand recording. At that moment, a Voorhees police officer kicked in the front door and multiple officers entered the apartment with assault rifles drawn and pointed at White. One officer ordered White to get on the floor, and despite complying with the order,

_____

[1] The Court takes these facts primarily from Plaintiffs' pleadings. For purposes of considering the appeal of the Magistrate Judge's decision to deny a motion to amend, the Court assumes the truth of all facts asserted in a well pleaded complaint. As set forth below, in considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor.

the officer ordered a canine unit to attack him. The canine mauled White, leaving him bleeding and crying.

Davis was terrified and ran back into the bathroom and closed the door. Three male officers, including Defendant Michael Perez, entered the bathroom with their assault rifles drawn. With her hands raised, Davis asked the officers what was happening. They replied that it was a raid and they needed to detain her. Perez approached Davis, hyper-extended her hands behind her back, and handcuffed her.

A week earlier Davis had undergone reconstructive breast surgery for treatment of ectodermal dysplasia, and her stiches and bandages were visible to the officers. Davis asked Perez to loosen the handcuffs because she had just had surgery and the handcuffs were hurting her. Another officer said, "No! Shut the fuck up!" and brought her into the living room, where she again saw White on the floor, bleeding and crying. She asked him if he was okay, and the officer told Davis, "I said shut the fuck up!" and made her leave the apartment wearing only a towel. Davis asked if she could dress herself, and the officer said that a towel was fine.

Davis stood outside for an hour while police officers searched White's apartment as part of a drug raid. Davis's towel was slipping, exposing her body and medical condition to

neighbors, and she was in severe pain from being handcuffed. After the raid was over, the handcuffs were removed from Davis. She asked if they found anything, and the officers replied that they had not, but that they were taking her iPad, prescription medication, and cell phone. Davis objected and told them she would sue them if they confiscated her property. The officers laughed, but they ultimately did not take her property. The officers confiscated White's cell phone, however, and deleted the video White had taken of the raid.

Shortly after the incident, Davis remained in pain and noticed her stiches had loosened and started to bleed. Two weeks later, silicone began dripping around the loosened stitches and her pain worsened. Davis went to the doctor, who told her that her stitches had unraveled because of "excessive stretching" and he would need to redo her surgery, which was performed in March 2015. Davis was fired from her job because she was deemed unreliable due to two surgeries in less than one year.

Based on the foregoing allegations, Davis and White filed numerous constitutional and state law claims against Defendant Perez and John Doe Officers, as well as the Township of Voorhees. Since they filed their complaint, Plaintiffs have dismissed their claims against Voorhees Township, and have

4

conceded to the dismissal of several of their claims.  Davis's

claims pending against Perez include unconstitutional use of

force and common law assault and battery.  White's claims

pending against Perez include unconstitutional use of force,

common law assault and battery, and a violation of his First

Amendment rights.

Perez has moved for summary judgment on all the claims

pending against him, and he points to the facts developed

through discovery that contradict Plaintiffs' claims against

him.  Perez relates that a Voorhees Township detective conducted

an investigation of White concerning the distribution of

marijuana from White's apartment.  The investigation, which

lasted two months, was conducted because of numerous citizens'

complaints and information from a confidential informant.

The detective obtained a search warrant and gathered a team

to execute it.  Perez was assigned a role in the initial entry

team, which required him to secure the scene and detain any

individuals within the residence so the detectives could perform

the search.  According to Perez's deposition testimony:

> The initial Officers – Detectives that were making contact
> at the door, they head upstairs first followed by other
> Officers followed by myself.  Then they knock on the
> door.  I remember Detective Hawkins using a bullhorn to
> announce that it was a search warrant and to answer the
> door several times.  Eventually, entry was made in by the

Detectives.  As they come in, I kind of just followed
behind until we make entry.

Once inside, I veered to the left where the stair portion
is because we have Officers already inside on the first
level. So I hold the stairs to ensure that no one is coming
down those stairs while they make the scene safe on the
first floor.  While doing so, the first floor bathroom
door opened up suddenly, and that's where I encountered Ms.
Davis.

(Docket No. 52-2 at 5.)

Perez further testified that after he placed Davis in
handcuffs, she was detained in the kitchen area just as a
confrontation between White and the other officers ensued.  The
police report of the K-9 officer details the struggle between
White and the officers and their efforts to apprehend him.  (See
Docket No. 52-3.)  After White was secured, Davis was brought
outside to the patio, and provided with a large shirt to wear,
while the officers and detectives searched the apartment.

Voorhees Township EMS transported White to the hospital for
treatment of his injuries.  Perez accompanied EMS to the
hospital, and after he was treated, Perez transported White to
the Camden County Correctional Facility.  Perez's only
interaction with Davis was handcuffing her – he did not detain
her outside - and Perez's only interaction with White was
transporting him to and from the hospital.

6

With regard to Davis's claims, Perez argues that his handcuffing of Davis does not constitute excessive force or assault and battery because his initial securing of Davis under the circumstances was reasonable. Perez does not deny that Davis informed him of her surgery or that the handcuffs were too tight, but in addition to the reasonableness of the handcuffing to secure the premises for the execution of the search warrant and his very limited interaction with Davis, Davis's alleged injuries are not supported by the evidence. Perez points out that Davis did not seek treatment for her alleged injuries, and when she returned to her doctor almost two months later, her doctor did not note any problems associated with stretching, and an ultrasound report showed no evidence of leaking silicone.

With regard to White, Perez argues that he cannot be held liable for excessive use of force because he had no part in his apprehension. Perez also argues that he cannot be held liable for a First Amendment violation because White has provided no proof that his cell phone video was deleted and, if it was deleted, that Perez deleted it.

During the pendency of Perez's motion for summary judgment, Plaintiffs filed an appeal of the magistrate judge's denial of their motion for leave to file an amended complaint. Plaintiffs' appeal is also pending before this Court.

In their motion to amend, Plaintiffs had sought to add as
defendants six officers and detectives who were involved in the
incident. After setting forth the appropriate standard of
review under Federal Civil Procedure Rule 15, the magistrate
judge observed:

> Although the incident in question occurred on September 18,
> 2014, plaintiffs did not seek to join the new defendants
> until they filed their motion on April 10, 2017. This was
> almost one year after the complaint was filed (May 17,
> 2016) and six months after the deadline to amend pleadings
> (November 1, 2016) expired. Further, the motion was filed
> after the expiration of the original fact discovery
> deadline of March 31, 2017. Plaintiffs' delay is not
> excusable. Plaintiffs could have easily identified the
> police officers at issue before the complaint was filed by
> obtaining copies of the relevant police report(s).
> Further, Voorhees' September 14, 2017 Rule 26 disclosures
> named Voorhees, Brennan and the existence of arrest
> reports, police narratives and use of force reports. In
> addition, Voorhees' November 15, 2016 answers to
> interrogatories disclosed the identities of officers
> plaintiffs now want to join and stated they were involved
> with plaintiff's incident – Gruber, Saputo, Russo, Brennan
> and Klein. Thus, plaintiffs knew or should have known the
> identities of all the police officers involved in their
> incident long before the deadline to amend pleadings
> expired, and even before the complaint was filed.

(Docket No. 48 at 5-6.)[2]

The magistrate judge found that neither good cause nor
excusable neglect justified Plaintiffs' belated effort to add

---

[2] The reference to September 14, 2017 Rule 26 disclosures is an
obvious error. The record is clear those disclosures were made
one year earlier on September 15, 2016. (Docket No. 42 at 2.)

the new defendants, and the addition of these defendants 2 and a half years into the case would cause substantial prejudice to defendants.  The magistrate judge further found that the amendments would not "relate back" to the original filing date of the complaint because of the prejudice to defendants and lack of excusable neglect, and Plaintiffs' amendment would therefore be futile, as the claims were time-barred by the applicable statute of limitations.  (Id. at 6-18.)

Plaintiffs filed a motion for reconsideration of the magistrate judge's decision, arguing that an intervening Third Circuit case, Mullin v. Balicki, 875 F.3d 140 (3d Cir. 2017), compelled the magistrate judge to reverse his decision and permit Plaintiffs' amendment.[3]  The magistrate judge denied Plaintiffs' motion, finding Mullin inapposite in that unlike in Mullin, where the key information to identify a defendant was not independently available to the plaintiffs, the information that would lead Plaintiffs here to identify the proposed new parties and their roles in the activity at issue was available to them even before the complaint was filed.  (Docket No. 72,

---

[3] Plaintiffs also filed a motion stay this Court's resolution of Perez's motion for summary judgment until the magistrate ruled on their motion for reconsideration.  (Docket No. 60.)  Through this Court's resolution of the summary judgment motion and Plaintiffs' appeal, Plaintiffs' motion to stay is now moot.

77.)  The magistrate judge re-emphasized his observations in his prior decision regarding Plaintiffs' undue delay, lack of excusable neglect, and prejudice to the defendants, and further emphasized, "this case is distinguishable from Mullin because the basis of the motion to amend was not dependent, as it was in Mullin, on a document or information that was exclusively in the defendant's control.  In this case, unlike Mullin, no cogent reason has ever been given for [Plaintiffs'] delay in seeking to amend."  (Docket No. 77 at 10.)

The Court will address Plaintiffs' appeal and Perez's motion for summary judgment in turn.

## DISCUSSION

### A.   Jurisdiction

Plaintiffs have brought their claims pursuant to 42 U.S.C. § 1983, as well as the New Jersey Civil Rights Act and New Jersey state law.  This Court has jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

### B.   Review of Magistrate Judge's Denial of Plaintiffs' Motion for Leave to File an Amended Complaint

Plaintiffs contend that the magistrate judge's decision denying their motion to file an amended complaint should be

reversed because <u>Mullin</u> directs that Plaintiffs have an absolute right to amend their civil rights complaint regardless of the circumstances. Plaintiffs request a briefing schedule to support their appeal, and also request that the de novo standard of review be applied, rather than the more deferential clearly erroneous standard, because the magistrate judge's decision was dispositive, and should have been made by way of a report and recommendation. Alternatively, Plaintiffs ask that this Court deem the magistrate judge's decision to be non-appealable to this Court, causing the decision to be final and appealable to the Third Circuit.

The standard of review of a magistrate judge's decision depends on whether the motion is dispositive or non-dispositive. For an appeal of a non-dispositive motion, 28 U.S.C. § 636(b) requires the district court to apply the clearly erroneous standard of review. For an appeal of a dispositive motion, the magistrate judge must submit a report and recommendation to the district court, and the district court applies a de novo standard of review. 28 U.S.C. § 636(b)(1)(B). Any such appeal must be submitted to the district court within 14 days. Local Civil Rule 72.1(c)(1), (2).

A motion to amend a complaint is "usually considered non-dispositive." Kuchinsky v. Pressler & Pressler, LLP, 2014 WL 1679760, at *2 (D.N.J. 2014) (quoting Gutierrez v. Johnson & Johnson, 227 F.R.D. 255, 257 (D.N.J. 2005) (quoting Thomas v. Ford Motor Co., 137 F. Supp. 2d 575, 579 (D.N.J.2001)); see also L. Civ. R. 72.1(c)(2) (listing dispositive motions: motions for injunctive relief (including temporary restraining orders and preliminary injunctions), for judgment on the pleadings, for summary judgment, to dismiss or permit the maintenance of a class action, to dismiss for failure to state a claim upon which relief may be granted, to involuntarily dismiss an action, for judicial review of administrative determinations, for review of default judgments, and for review of prisoners' petitions challenging conditions of confinement).

When, however, a magistrate judge's decision on a non-dispositive motion contains dispositive elements, those findings are reviewed de novo. Thomas, 137 F. Supp. 2d at 579; cf. Kenny v. U.S., 489 F. App'x 628, 630 n.2 (3d Cir. 2012) (noting that "neither we nor our sister circuits appear to have resolved the precise issue here - whether a motion to amend that in practice results in dismissal is a dispositive motion - and the authority in the District of New Jersey is divided on this question").

This Court finds, under either the clearly erroneous standard or the de novo standard, that the magistrate judge's decision to deny Plaintiffs' motion to amend their complaint was correct, and the magistrate judge properly distinguished <u>Mullin</u> in denying Plaintiffs' motion for reconsideration. The magistrate judge's decisions thoroughly and meticulously address all the factors in considering a motion to amend, and this Court agrees with the magistrate judge's findings. Indeed, the Court comes to the same conclusions for precluding Plaintiffs from adding six new defendants to the case when those individuals were readily identified or identifiable years before.

This Court also finds <u>Mullin</u> inapplicable to the situation here for the reason articulated by the magistrate judge, and finding no reason to modify or alter that determination, adopts it as its own.[4] Consequently, the Court will deny Plaintiffs' appeal of the magistrate judge's decisions, and adopt and affirm the denial of Plaintiffs' motion to file an amended complaint.

---

[4] Local Civil Rule 72.1(c)(2) provides that when a party has filed objections to a magistrate judge's decision, a district court judge "need not normally conduct a new hearing and may consider the record developed before the Magistrate Judge, making his or her own determination on the basis of that record."

### C.  Perez's Motion for Summary Judgment

#### 1.  *Standard for Summary Judgment*

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### 2.  *Analysis*

Section 1983 is not a source of substantive rights, but provides a vehicle for vindicating the violation of other federal rights.  Graham v. Connor, 490 U.S. 386, 393-94 (1989).  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in

equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

To state a claim for relief under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).[5]

For Plaintiffs' claims against Perez acting in his personal capacity, the qualified immunity doctrine governs the analysis. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Reichle v. Howards, 566 U.S. 658, 664 (2012). In order to determine whether a government official is entitled to qualified immunity, two questions are to be asked: (1) has the plaintiff alleged or shown a violation of a constitutional right, and (2) is the right at issue "clearly

---

[5] Because the New Jersey Civil Rights Act was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under either the United States or New Jersey Constitutions, the NJCRA is interpreted analogously to § 1983. See Pettit v. New Jersey, 2011 WL 1325614, at *3 (D.N.J. 2011). Thus, Plaintiffs' NJCRA violation claims fail for the same reasons as Plaintiffs' § 1983 claims.

established" at the time of the defendant's alleged misconduct? Pearson v. Callahan, 555 U.S. 223, 236 (2009). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Id. It is the defendant's burden to establish entitlement to qualified immunity. Kopec v. Tate, 361 F.3d 772 (3d Cir. 2004).

### a. Plaintiff's excessive force claims

For Plaintiffs' excessive force claims, the Fourth Amendment's "objective reasonableness" test is applied. Sharrar v. Felsing, 128 F.3d 810, 820–21 (3d Cir. 1997) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). The objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (relying on Graham, 490 U.S. at 396; Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995)). "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility

that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Id.

White's excessive force claim fails against Perez because White has not provided any evidence that Perez interacted with White other than his transport to and from the hospital, and White does not contend Perez used excessive force during that time.[6] In short, White has failed to offer evidence which if believed by a factfinder would tend to show that Perez violated White's constitutional rights. Accordingly, Perez is entitled to qualified immunity on White's excessive force claim against him.

---

[6] Plaintiffs' opposition brief argues that Perez had a duty to intervene in the force applied by the other officers during their attempt to secure White. In addition to the lack of such a claim in Plaintiffs' complaint, it is without any record support. A police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior. Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002). An officer is only liable, however, if there is a realistic and reasonable opportunity to intervene. Id. White has not provided any evidence the other officers' use of force was excessive, and even if their use of force was deemed excessive, White has not shown that Perez was in a position to have a realistic and reasonable opportunity to intervene. To the contrary, the record evidence shows that Perez was securing Davis during the other officers' efforts to secure White. Any attempt to amend the complaint to include a failure to intervene claim would therefore be futile. See Fletcher Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007) (directing that in civil rights cases the district courts must offer amendment irrespective of whether it is requested unless doing so would be inequitable or futile).

As for Davis, Perez does briefly interact with Davis by handcuffing her and standing with her in the kitchen area while the other officers attempted to apprehend White.  However, Davis's claim of excessive force against Perez also fails.  The Third Circuit's seminal case concerning a viable excessive force claim due to unreasonable handcuffing, Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004), sets forth the proper analysis to be applied in such circumstances.  After stating the Graham reasonableness test under the Fourth Amendment, the Third Circuit explained:

> Kopec alleges that Officer Tate placed handcuffs on him that were excessively tight and failed to respond to Kopec's repeated requests for them to be loosened.  He estimates that it took Officer Tate ten minutes to loosen the handcuffs despite the severe pain they were causing and his efforts to secure their release.  As a result, Kopec claims that he suffered permanent nerve damage to his right wrist.  These facts, if credited, would establish that Officer Tate's use of force was excessive in violation of the Fourth Amendment.

Kopec, 361 F.3d at 777.  The Third Circuit cautioned, however:

> In reaching our conclusion that Kopec has asserted facts that if proven would establish that there had been a violation of his constitutional rights, we point out that Officer Tate faced rather benign circumstances that hardly justified his failure to respond more promptly to Kopec's entreaties, at least to the extent to ascertain if the handcuffs were too tight.  Officer Tate was not, after all, in the midst of a dangerous situation involving a serious crime or armed criminals.  Accordingly, this opinion should not be overread as we do not intend to open the floodgates to a torrent of handcuff claims.  Thus, if Officer Tate had

been engaged in apprehending other persons or other
imperative matters when Kopec asked him to loosen the
handcuffs our result might have been different.

Id.

Following the Third Circuit's observation that the context

of a person's handcuffing is highly relevant to the viability of

a claim of excessive force based on the handcuffing itself, it

is important to consider "three important law enforcement

interests that, taken together, justify the detention of an

occupant who is on the premises during the execution of a search

warrant: officer safety, facilitating the completion of the

search, and preventing flight." Bailey v. U.S., 568 U.S. 186,

194-95 (2013) (discussing Michigan v. Summers, 452 U.S. 692, 701

(1981)).  The Supreme Court explained,

> [1]  When law enforcement officers execute a search
> warrant, safety considerations require that they secure the
> premises, which may include detaining current occupants.
> By taking unquestioned command of the situation, the
> officers can search without fear that occupants, who are on
> the premises and able to observe the course of the search,
> will become disruptive, dangerous, or otherwise frustrate
> the search. . . .
>
> [2] If occupants are permitted to wander around the
> premises, there is the potential for interference with the
> execution of the search warrant.  They can hide or destroy
> evidence, seek to distract the officers, or simply get in
> the way. . . .
>
> [3] If police officers are concerned about flight, and have
> to keep close supervision of occupants who are not
> restrained, they might rush the search, causing unnecessary

damage to property or compromising its careful execution. Allowing officers to secure the scene by detaining those present also prevents the search from being impeded by occupants leaving with the evidence being sought or the means to find it.

Id. at 194-99 (discussing Summers, 452 U.S. at 701-03).

In this case, it is undisputed that Perez detained and handcuffed Davis in order to secure the apartment for a search to be conducted pursuant to a valid search warrant. Accepting as true that Davis complained to Perez that the handcuffs were too tight and that the position of her arms was causing pain relative to her recent surgery,[7] Davis has not provided any

---

[7] Perez points out that: (1) Davis did not seek treatment for her alleged injuries from the handcuffing; (2) her follow-up appointment with her surgeon almost two months later shows the breast implant was intact, with no erythema (reddening of the skin), and no fluctuance (a fluid-filled structure that produces a wave-like motion when palpated); and (3) an ultrasound revealed the implant was intact without rupture. (Docket No. 52-3 at 77, 79.) Perez also objects to the relevancy of photographs attached to Davis's opposition brief, which purport to show a bulge under Davis's right breast on October 29, 2014 (which was the same day as Davis's follow-up visit with her surgeon), because in addition to the lack of expert testimony about what they depict, Davis has never claimed that Perez – or any other officer – saw that part of Davis's body, as she testified she was covered by a towel – and then later a shirt – with only the top part of her breasts exposed. (Docket No. 61-3 at 1.) Perez further objects to the purported expert provided by Davis for the first time in her opposition brief. Perez contends the report is procedurally improper and, perhaps more importantly, prejudicial because it opines on a new injury not previously alleged. Rather than silicone leakage, the expert states that Davis presented a "right sided brachial plexopathy" which is "consistent with trauma that would occur if her arms

evidence that her initial handcuffing was objectively

unreasonable under the circumstances of securing the scene for

the reasons expressed in Bailey.

Davis has also failed to provide any evidence as to how

long Perez was in control of Davis after the handcuffing.  Davis

testified that after she was detained in the kitchen while

officers attempted to apprehend White, she was taken outside to

the patio, where she remained during the search.  The record

does not reflect that Perez remained outside with Davis and

refused to adjust Davis's handcuffs or was otherwise responsible

for her condition relative to her detention.[8]

_____

were pulled behind her with excessive force, while in
handcuffs."  Rather than suffering damage to her breast surgery,
the expert relates that Davis's pain resulted from damage to the
brachial plexus, an area on the side of the neck where nerve
roots from the spinal cord split into each arm's nerves.
(Docket No. 70 at 4.)  The Court agrees that the proffered
expert report should not be considered.  Davis had an obligation
to disclose her experts in a timely fashion and failed to do so.
Moreover, introducing a new theory of injury at the summary
judgment phase is highly prejudicial in that Defendant has had
no notice of such a theory and therefore no ability to respond.
Nonetheless, even accepting that Davis suffered some sort of
injury from being handcuffed, Davis has not presented evidence
that Perez's decision to handcuff Davis while he had her briefly
detained in the apartment kitchen while the altercation with
White resolved itself was objectively unreasonable under the
circumstances.

[8] Even though in her complaint Davis alleges that she remained in
a towel during the search, Davis testified that she was provided
a shirt to wear while she was outside.

Davis bears the initial burden of showing that Perez's conduct –
the moving party's conduct - violated some clearly established
statutory or constitutional right, Sherwood v. Mulvihill, 113
F.3d 396, 399 (3d Cir. 1997).  In the absence of evidence that
Perez ignored her subjective complaints of pain for a period of
time after the dynamic situation of White's arrest ended, Davis
has failed to show that Perez acted in an objectively
unreasonable manner under the circumstances.  See, e.g., Shuman
v. Raritan Township, 2016 WL 7013465, at *15–16 (D.N.J. 2016)
(finding that the plaintiff failed to meet his burden of showing
the defendant officer used excessive force because the plaintiff
failed to offer factual support for one key element necessary to
determine whether a failure to loosen handcuffs constitutes
excessive force, namely how long the officer delayed in
adjusting the plaintiff's handcuffs, and noting that without any
facts from the plaintiff suggesting the time period between
plaintiff's initial request for relief and the officer's
granting of that request, the court could not find the plaintiff
to have introduced facts demonstrating the officer's conduct was
objectively unreasonable); see also Gilles v. Davis, 427 F.3d
197, 207 (3d Cir. 2005) (at summary judgment rejecting an
excessive force by handcuffing claim, finding that it was not
objectively reasonable to deduce Gilles was in pain and noting

23

Gilles did not seek or receive medical treatment after the fact).

Consequently, Perez is entitled to qualified immunity – and summary judgment in his favor - on Davis's claim of excessive force.[9]  See Rivera v. Lake Como, --- F. App'x ---, 2018 WL 2024728 (3d Cir. May 1, 2018) (affirming the district court's

---

[9] Perez is also entitled to summary judgment on Plaintiffs' assault and battery claims.  The notice provision of the New Jersey Tort Claims Act, N.J.S.A. 59:8-3, applies to both intentional and non-intentional torts asserted against public employees. Lassoff v. New Jersey, 414 F. Supp. 2d 483, 490 (D.N.J. 2006) (citing Velez v. City of Jersey, 180 N.J. 284, 286, 850 A.2d 1238 (2004)).  Moreover, under the NJTCA, "A public employee is not liable if he acts in good faith in the execution or enforcement of any law.  Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment." N.J.S.A. 59:3-3.  The NJTCA strips a public employee of any immunity, however, if that employee is found to have engaged in "willful misconduct."  N.J.S.A. 59:3-14(a).  The same "objective reasonableness" standard that is used to determine whether a Defendant enjoys qualified immunity from actions brought pursuant to 42 U.S.C. § 1983 is used to determine questions of good faith arising under N.J.S.A. 59:3-3.  See Mantz v. Chain, 239 F. Supp. 2d 486, 507–08 (D.N.J. 2002) (citing Lear v. Township of Piscataway, 566 A.2d 557 (N.J. Super. Ct. App. Div. 1989)).  It is not clear in this case whether Plaintiffs complied with the NJTCA, but the defense of failure to file notice under the Tort Claims Act is an affirmative one which must be pleaded in order to avoid surprise, and a defendant may be found to have waived the protection thereof by failing to plead it as a defense.  Hill v. Board of Educ. of Middletown Tp., 443 A.2d 225, 227-28 (N.J. Super. Ct. App. Div. 1982).  To the extent that Plaintiffs complied with the NJTCA, Perez is immune under the NJTCA for the same reasons Perez is entitled to summary judgment on Plaintiffs' excessive force claims.

grant of summary judgment under the doctrine of qualified immunity on the plaintiff's excessive force claim); Telzer v. Borough of Englewood Cliffs, 2018 WL 1757026, at *12 (D.N.J. April 12, 2018) (summary judgment may be granted to officers if, when interpreting the facts in the light most favorable to the plaintiff, the court determines that the facts do not support a violation of a clearly established constitutional right) (citing Mitchell v. Forsyth, 472 U.S. 511, 546 (1985) ("[W]hen a trial court renders a qualified immunity decision on a summary judgment motion, it must make a legal determination very similar to the legal determination it must make on a summary judgment motion on the merits"); Scott v. Harris, 550 U.S. 372, 386 (2007) (granting summary judgment to the defendant police officer for the plaintiff's claims of excessive force, finding that no reasonable jury could conclude otherwise that the car chase that respondent initiated posed a substantial and immediate risk of serious physical injury to others, and Scott's attempt to terminate the chase by forcing respondent off the road was reasonable); see also Couden v. Duffey, 412 F. App'x 476, 482 (3d Cir. 2011) (affirming the district court, which found that the facts, even when viewed most favorably to the plaintiff, did not support a claim of excessive force, as the officer's actions were objectively reasonable even if he acted

as the plaintiff contended); <u>Feldman v. Community College of</u> <u>Allegheny (CCAC)</u>, 85 F. App'x 821, 826 (3d Cir. 2004) ("[W]e agree with the District Court's assessment that, even accepting Feldman's description of the arrest, the force resulted as part of the struggle and was not excessive in light of Feldman's physical resistance.  The force was reasonable under <u>Groman</u> and fails to amount to a § 1983 violation.").

### b. White's First Amendment violation claim

White alleges that his cell phone was confiscated and the video recording he took of the incident deleted.  Putting aside the "right to record" is not a clearly established right under the First Amendment,[10] and that White has not provided any evidence the officers deleted a video recording from his phone, White's First Amendment violation claim against Perez fails because he has not alleged, much less offered supporting evidence, that it was Perez who confiscated his phone and deleted the recording.  Consequently, Perez is entitled to summary judgment on White's First Amendment violation claim.

---

[10] <u>See</u> <u>Karns v. Shanahan</u>, 879 F.3d 504, 523–24 (3d Cir. 2018) (discussing <u>Kelly v. Borough of Carlisle</u>, 622 F.3d 248 (3d Cir. 2010), where the Third Circuit concluded that there was "insufficient case law establishing a right to videotape police officers during a traffic stop to put a reasonably competent officer on 'fair notice' that seizing a camera or arresting an individual for videotaping police during the stop would violate the First Amendment").

## CONCLUSION

For the reasons expressed above, this Court adopts and affirms the magistrate judge's decision denying Plaintiffs' motion for leave to file an amended complaint. Accordingly, Plaintiffs' appeal of the magistrate judge's order will be denied. In addition, also for the reasons expressed above, Defendant Michael Perez is entitled to summary judgment in his favor on all of Plaintiffs' claims against him.

An appropriate Order will be entered.


Date: __May 8, 2018__                    __s/ Noel L. Hillman__
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.